IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEREK STITT, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NORTHERN CAMBRIA BOROUGH, )<br>MAYOR LISA TOMALLO MAYS, and PSP )<br>TROOPER MARK GALLI, )<br>)<br>Defendants. | Civil Action No. 3:24-205<br>Judge Stephanie L. Haines |

## OPINION

Plaintiff Derek Stitt ("Stitt") brings this case in civil action against three defendants, Northern Cambria Borough ("the Borough"), Mayor Lisa Tomallo Mays ("Mays"), and Pennsylvania State Trooper Mark Galli ("Galli") for a series of events that occurred beginning on November 13, 2023, and ending on July 22, 2024, when Stitt resigned as Chief of Northern Cambria Police.

On August 31, 2024, Stitt filed a Complaint (ECF No. 4) alleging that the Borough, Mays, and Galli (collectively "Defendants") violated his civil rights of First Amendment Free Speech (Count 1 as to Mays) (Count 2 as to the Borough), and his Fourth and Fourteenth Amendment Due Process rights (Count 3 as to the Borough and Mays). He also alleges that Defendants conspired to deprive him of his civil rights (Count 4). Because of the alleged poor treatment of Stitt by Defendants, Stitt claims he was constructively discharged in violation of Pennsylvania Whistleblower Law (Count 5 as to the Borough) and that the Borough breached the employment contract with Stitt (Count 6 as to the Borough).

Each Defendant moved to dismiss Stitt's claims. On November 5, 2024, the Borough filed a Motion to Dismiss in Part (ECF No. 13) and supporting Brief (ECF No. 14) claiming that Counts 3-6 are legally insufficient. On December 20, 2025, Defendant Galli filed a Motion to Dismiss (ECF No. 24) and supporting Brief (ECF No. 25) claiming that Stitt had not sufficiently plead Galli's involvement in any deprivation of Stitt's Constitutional Rights. On that same day, Defendant Mays filed a Motion to Dismiss (ECF No. 26), with supporting Brief (ECF No. 27), that states that Stitt did not allege plausible claims against Mays in Counts 1, 3, and 5. Stitt filed Responses to each of Defendants' filings (ECF Nos. 19, 30, 29, respectively). The Borough and Mays each filed a Reply (ECF Nos. 22, 31, respectively). These Motions are ripe for disposition of the Court.

## I. Factual Background[1]

### A. Defendant Galli

On October 27, 2023, Stitt had a phone call with the Northern Cambria District Attorney ("DA") about his dissatisfaction with the DA's office. *Id.* ¶ 35. Stitt was unhappy that the Cambria County DA refused to issue a search warrant in a case and told Stitt to wait 2 weeks. *Id.* ¶ 38. Stitt stated he would apply to the Allegheny County DA for the warrant. *Id.* ¶ 39. The Cambria DA became irate and said that he had been "sitting on something" involving the Northern Cambria Police and would assign the matter to the Pennsylvania State Police ("PSP") to investigate. *Id.* ¶ 41. On October 30, 2023, PSP Trooper Galli arrived at the Northern Cambria Police Station demanding to investigate the evidence room claiming that a Northern Cambria Police Officer had stolen a gun. *Id.* ¶ 42. The gun was actually purchased by a Northern Cambria Officer. *Id.* ¶ 43.

---

[1] Unless otherwise noted, the facts included in this section are taken from the Complaint (ECF No. 4). These facts are provided in chronological order and uncontested unless otherwise noted.

2

Stitt gave Galli access to the evidence room. *Id.* ¶ 44. On November 9, 2023, Galli emailed Stitt and Sargent Marshall demanding additional reports and stating that he had been in contact with Solicitor Jubas as instructed by Mays. *Id.* ¶ 45.

### B. Defendant Mays

On November 13, 2023, Mays directed Stitt to place Sargent Tonya Marshall into the role of school Security Resource Officer ("SRO"). Sargent Marshall had not been trained as an SRO, thus her placement in that role would violate the law and cause a breach of agreement. ECF No. 4, ¶¶ 14, 15. Sargent Marshall submitted a grievance about the SRO placement to the same effect. *Id.* ¶ 16. At the grievance hearing, Mays told Stitt to take over the role as SRO, though he too lacked the credentials; he declined. *Id.* ¶ 17, 18. On November 27, 2023, after the declination, Mays telephoned the Police Union's grievance representative and represented that Stitt and Sargent Marshall were involved in a sexual relationship. *Id.* ¶ 18. The allegations of the sexual relationship were discussed publicly by Borough Police Officers at a regularly scheduled Council meeting held on December 11, 2023. *Id.* ¶ 22.

During an executive session of Council, Mays' behavior was discussed and a "conflict resolution" meeting was scheduled on December 19, 2025, to address the issues. *Id.* ¶ 23. Mays did not attend the conflict resolution meeting but was instead seen circling the Borough building in her car. *Id.* ¶ 27. Mays' husband, Trooper Mays, and Borough Solicitor, Jerry Jubas[2] were also circling the building in their cars. *Id.*

---

[2] Borough Solicitor Jubas is the husband of Mays' sister, Deborah Tomallo Jubas. ECF No. 4 ¶ 24, 33. Mays' sister Sheila Ondecko formerly worked for Solicitor Jubas. *Id.* ¶ 32. The Complaint alleges various acts of intimidation performed by relations of Mays, *see* ECF No. 4, ¶¶ 51, 52, however, these individuals are not parties to this case and therefore their actions are not relevant to the claims at issue. Actions of Defendants towards others who are not parties to the case are also irrelevant.

Mays engaged in other intimidating behaviors. As of November 2023, Stitt was no longer invited to the "Chiefs Meetings." *Id.* ¶ 47. That said, on May 20, 2024, Stitt was suddenly advised that he would have to attend a meeting on short notice and during his paid vacation. *Id.* ¶ 75. Stitt could not attend because he was covering Sargent Marshall's shift due to her night training requirements. As a consequence, Mays suspended Stitt without pay and without due process. *Id.* ¶ 76. On December 9, 2023, Mays was observed aggressively "doing doughnuts" in front of the K-9 vehicle in view of Sargent Marshall. *Id.* ¶ 48. On December 12, 2023, Mays emailed Stitt copying the Borough Solicitor Jubas and the DA; the email withdrew the authorization of use for the newest police cruiser without Mays' approval. *Id.* ¶ 24. On December 18, 2023, Mays demanded access to cameras situated through the Borough, as well as station mounted cameras. *Id.* ¶ 26. On January 1, 2024, Mays took jurisdiction of Stitt's scheduling duties, eventually scheduling Stitt to work over 14 hours on meeting days. *Id.* ¶ 28. On February 6, 2024, following a committee meeting, Mays menaced Stitt with a manila folder saying, "You better stop your shit or I have stuff here to bury you!" *Id.* ¶ 58. Mays suspended Stitt without pay for ten days for yelling rude remarks at the Borough Manager. Stitt claims the suspension was for investigating Mays' entry into a CJIS Secure Area without certification requirements. *Id.* ¶¶ 78-81. Stitt was forbidden to communicate with Council regarding either of the suspensions because of pending investigations. *Id.* ¶¶ 83, 84. Therefore, Stitt could not exercise his due process rights. *Id.* ¶ 86.

The Borough Council directed a letter to Mays stating that her extremely unprofessional behaviors, naming, among others, some of the behaviors described above, created the risk of liability for Mays and the Borough. *Id.* ¶ 29. One week after the Counsel letter was issued, Mays filed a Preliminary Injunction in the Court of Common Pleas seeking to overturn the Council's granting the grievance of Sargent Marshall. *Id.* ¶ 30. Mays states that Plaintiff misstates the

purpose of the Motion for Preliminary Injunction (ECF No. 27, fn 1). The Petition for Preliminary Injunction requested that Northern Cambria Borough Council be enjoined from interfering with her statutory authority as Chief Law Enforcement Officer. It also requested that Northern Cambia Borough Council be enjoined from interfering with her ultimate executive authority and ability to exercise full charge and control of the Chief of Police and the police force in their day-to-day operations (ECF No. 1-3, p 4).

On July 22, 2025, Stitt feeling it was his only option, resigned. He stated that there was an unlawful investigation of him that was preventing him from exercising his Fourteenth Amendment Due Process rights to hear the allegations against him and to defend himself against the fraudulent investigation. As of the date of what he considers his constructive discharge, he had been suspended without pay for 41 days. *Id.* ¶¶ 88-90.

**C. Retaliation Claim**

On February 14, 2024, Borough Councilmember, Donald Ferguson appeared at the Northern Cambria Police Station. He described a visit to his home by Galli on January 25, 2024. *Id.* ¶ 60. Ferguson said that Galli demanded entry into Ferguson's home and interrogated Ferguson about possession of a firearm. *Id.* ¶ 61. This firearm was legally owned and being held for a friend, a former Northern Cambria Police Officer. *Id.* During this hour-long interrogation, Ferguson was threatened with arrest and twice "perp-walked" to the front door with his hands behind his back by Galli. *Id.* Galli also made statements to Ferguson that "you and the Council need to let the Mayor do her job!" and "The Council and Chief Stitt are corrupt." *Id.* Finally, Galli instructed Ferguson to lie about the purpose of the visit. *Id.* It was determined that the only way that Galli could have known about the gun was if Jubas had told him. *Id.* ¶ 67. Stitt prepared an incident report. "Upon thorough examination of the investigation and consultations with relevant agencies

5

regarding the incident, it is apparent that the suspect, Mark Galli, conspired with Jubas and Mayor Mays to instigate an investigation as a retaliatory measure in support of a coworker and associates." *Id.* ¶ 68.

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the Court is not opining on whether the plaintiff will likely prevail on the merits; the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-236 (3d ed. 2004)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should only be dismissed under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the Court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as stated in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions

6

disguised as factual allegations. *See Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When ruling on a motion to dismiss under Rule 12(b)(6), the court must generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). A court may take judicial notice of documents filed in other court proceedings because they are matters of public record. *See Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 325 (D.N.J. 2013).

### III.    Discussion

Stitt claims that Defendants' conduct has caused him to suffer irreparable harm and has caused him to be deprived of wages, benefits, and career opportunities as well as caused him reputational harm. As stated above, he alleges that Mays and the Borough violated his right to

7

First Amendment Free Speech (Count 1 as to Mays) (Count 2 as to the Borough), and Mays and the Borough violated his Fourth and Fourteenth Amendment Due Process rights (Count 3 as to the Borough and Mays). He also alleges that Defendants conspired to deprive him of his civil rights (Count 4). Because of the alleged poor treatment of Stitt by Defendants, Stitt claims he was constructively discharged in violation of Pennsylvania Whistleblower Law (Count 5 as to the Borough) and that the Borough breached the employment contract with Stitt (Count 6 as to the Borough).

### A.    First Amendment Free Speech (Counts 1 and 2)

Stitt's First Amendment Claims apply to Mays and the Borough. Stitt claims that his opposition to Sargent Marshall's placement as an SRO, his support of Marshall's grievance, his advocacy to the Borough, and his commencement of various investigations on behalf of the department is constitutionally protected conduct. He claims that Mays and the Borough retaliated against him for such conduct. Stitt states that Mays engaged in intimidation tactics as described in the facts and that her actions were reasonably calculated to deter a person of ordinary firmness from exercising his First Amendment Rights. ECF No. 4, ¶¶ 93-97. As to the Borough, it knowingly permitted such behaviors by Mays and others which made Stitt's conditions of employment so intolerable that a reasonable person would resign under similar conditions. ECF No. 4, ¶ 101. The Borough also failed to rescind Mays' 41-day suspension that led to Stitt's constructive discharge. ECF No. 4, ¶ 102. The Borough has not moved to dismiss Count 2 against it, therefore, Count 2 as to the Borough will survive.

Mays states the First Amendment claim was not sufficiently pled and therefore Stitt does not state a plausible claim. ECF No. 27, p. 7. Mays asserts that the claim does not satisfy the elements as cited in *Garcetti v. Ceballos*, 547 U.S. 410 (2006). Public employee speech is

"protected" when the employee: (1) speaks "as a citizen," (2) "on a matter of public concern," and (3) the government employer does not have "an adequate justification" for its negative enforcement action. *Id.* at 418. Therefore, the speech cannot be protected if it falls within the scope of employment or related to internal workplace grievances or dynamics. ECF No. 27, p. 7. Speech is within the scope of employment if it (1) relates to "special knowledge" or "experience" acquired through the employee's job; (2) raises complaints or concerns about issues relating to the employee's job duties "up the chain of command" at his workplace; (3) the speech fell within the employee's designated responsibilities; and (4) it is in furtherance of the employee's designated duties, even if the speech at issue is not part of them." ECF No. 27, pp.7-8 (citing *Kimmett v. Corbett*, 554 Fed. Appx. 106, 111 (3d Cir. 2014)).

Stitt replies that the speech at issue is a matter of public concern, and that case law supports his position that he engaged in protected speech. "This Court has repeatedly found that public employees' criticism of the internal operations of their places of pubic employment is a matter of public concern." *Zamboni v. Stamler*, 847 F.2d 73, 77 (3d Cir. 1988). The public has a significant interest in encouraging legitimate whistleblowing so that it may receive and evaluate information concerning the alleged abuses of public officials. *See O'Donnell v. Yanchulis*, 875 F.2d 1059 (3d Cir. 1989). Stitt also argues that some of his protected speech was outside the scope of his work. ECF No. 29, p. 7.

The Court finds that there are many issues of fact that must be considered by the fact-finder to properly determine whether there is a plausible claim of a violation of First Amendment Free Speech. First, there is a question of fact whether Stitt's protected speech was within the scope of his employment or in some cases he was "speaking as a citizen". He engaged in, and cites to, various instances of alleged protected speech which dependent upon further information may or

9

may not be within the scope of his employment. Furthermore, in some cases it is unclear whether he comes to know of alleged wrongdoing during his work or as a confidant. Finally, it is unclear whether the actions taken by Stitt were part of his designated duties. The Motion to Dismiss as to the First Amendment Free Speech claim will be denied.

### B.     Fourth and Fourteenth Amendment Due Process (Count 3)

Stitt's Due Process claims are against the Borough and Mays. Stitt claims that he has been deprived of his Fourteenth Amendment property interest in his Employment Agreement because he was not afforded his pre- and post-deprivation due process. ECF No. 4, ¶ 106. Stitt asserts that he had a 3-year contract that he was prevented from fulfilling. Stitt further states that he has been deprived of a Fourteenth Amendment reputational interest because he was defamed in relation to his constructive discharge. ECF No. 4, ¶ 107.

#### a. *Employment Contract*

Both Mays and the Borough argue that Stitt had no property interest in the Employment Agreement because the agreement was not fully executed, ECF No. 14, p. 10 (ECF No. 1-10), and also because Stitt relinquished any property right when he resigned. ECF No. 31, p. 3. To that end, it is asserted that Stitt was not the subject to a constructive discharge. ECF No. 14, p. 10. "As a general rule, signatures are not required to create a contract unless such signing is expressly required by law or by intent of the parties." *Beaver Dam Outdoors Club v. Hazleton City Auth.*, 944 A.2d 97, 103 (Pa. Commw. Ct. 2008). "To be enforceable, a contract must be between parties who have manifested an intention to be bound by the terms of the agreement; have terms that are sufficiently definite to be specifically enforced; and be supported by consideration on both sides of the contract—that is, bargained-for exchange and either a benefit upon the promisor or a detriment to the promisee." *Ohama v. Markowitz*, 434 F. Supp. 3d 303, 311–12 (E.D. Pa. 2020)

(citing *Channel Home Ctrs., Div. of Grace Retail Corp. v. Grossman*, 795 F.2d 291, 298-99 (3d Cir. 1986)). It is the Court's determination that a valid contract existed because there was a manifest intention to be bound, supported by consideration. Thus, Stitt had a property interest in his employment contract because he had a legitimate expectation of continued employment, at least for three years. *See Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005).

Because the Court has found Stitt had a property interest in his employment contract it now must determine whether his resignation/constructive discharge undermined that property interest. "To make out a claim of constructive discharge, plaintiff must establish that defendant caused or 'knowingly permitted' [] working conditions to be so intolerable that 'a reasonable person would feel compelled to resign.'" *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 975 (3d Cir.1998) (quoting *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1082 (3d Cir.1992)). Without reiterating the various incidents reported in the facts, the Court finds that Stitt has presented a plausible claim of constructive discharge. Given that the Court has found plausible claims for both a property interest in Stitt's employment contract and a plausible claim for constructive discharge, it will deny Mays' and the Borough's Motions to Dismiss Count 3 as to Stitt's property interest in his Employment Contract.

### b. Reputational Interest

As to a representational interest, the Parties argue the merits of the "Stigma Plus Test" which was established by the Supreme Court to determine whether the loss of reputation satisfies the requirements for a due process claim. To make out such a claim, Plaintiff must show some stigma to his reputation plus deprivation of some additional right or interest. *See Paul v. Davis*, 424 U.S. 693, 701 (1976). Both reputation damage and a deprivation of right guaranteed by the Constitution must be present to establish this claim.

Stitt argues that his reputation was tarnished by the unfounded accusations by Mays to the Police Union's grievance representative that he was having a marital affair with Sargent Marshall. ECF No. 4, ¶ 108. Stitt also states that Defendant Galli falsely proclaimed to the Northern Cambria Borough President that "the Council and Chief Stitt are corrupt" and that "the Chief is dirty." ECFR No. 4, ¶ 109. To establish the stigma, the offending statements must be both public and false. *See D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, 552 F. App'x 110 (3d Cir. 2014).

The plus element can be established by loss of employment, including constructive discharge. *See Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006). There must be a causal connection between the stigmatizing comments to the loss of employment. *See Kahan v. Slippery Rock Univ. of Pennsylvania*, 50 F. Supp. 3d 667, 711 (W.D. Pa. 2014), *aff'd*, 664 F. App'x 170 (3d Cir. 2016) (citing *D&D Assoc.*, 552 Fed. Appx. at 114). Mays and the Borough argue that Stitt has failed to provide a causal connection between the stigmatizing comments and his eventual resignation. ECF No. 27, p. 13; ECF No. 14, p. 13.

Plaintiff's response states that he believes further discovery will reveal further defamation of his character by Mays in public. ECF No. 19, pp. 5-8. While the comments cited by Stitt are stigmatizing, he has failed to connect those comments with his loss of employment. His resignation states:

> I have already addressed my concerns months ago and have continued to serve as Chief in the hope that the hostile work conditions would improve. Unfortunately, these conditions have not only failed to improve but have significantly worsened. I have been subjected to an unlawful suspension and denied my 14th Amendment rights to hear the allegations against me and to defend myself against this fraudulent investigation. There has been no incident that would warrant an investigation of any kind. This clearly appears to be an act of intimidation by the mayor & associates conspiring to prevent me from clearing my record.

ECF No. 19, pp. 7-8. The Court acknowledges that Stitt mentions hostile work conditions but there were many alleged hostile work conditions, and he did not cite to the defamatory

comments as reason for his departure. He refers to his suspension and lack of due process to defend against it. Thus, the Court finds that Stitt has not established a causal connection between the stigma and the violation of his rights. Since Stitt has failed to plead a plausible claim for a violation of the Fourth and Fourteenth Amendment as to his reputational interest, the Court will grant the Motion to Dismiss Count 3 as to Stitt's reputational interest.

### C. Conspiracy (Count 4)

Stitt claims the Defendants conspired to deprive him of his civil rights. "To establish a constitutional conspiracy claim, Plaintiff must prove: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Bower v. Lawrence Cnty. Child. & Youth Servs.*, 964 F. Supp. 2d 475, 488 (W.D. Pa. 2013) (citing *Carpenters v. Scott*, 463 U.S. 825, 828–29, (1983)).

Stitt must first and foremost establish that a conspiracy existed between the Defendants. "There are four elements to the tort of civil conspiracy: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu*, No. CV 2:14-3362, 2018 WL 585542, at *4 (D.N.J. Jan. 29, 2018), *aff'd sub nom. Cevdet Aksut Ve Ogullari Koll.Sti v. Cavusoglu*, 756 F. App'x 119 (3d Cir. 2018) (citing *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003)). While Stitt has established tenuous connections between Mays, the Borough, and Galli, he fails to plead any facts that would support the Defendants had

13

an agreement to usurp his civil rights. As such, the claim of conspiracy will be dismissed. In addition, because this is the only asserted claim against Galli, and the Court determined it is not a plausible claim, Galli will be dismissed from the case.

**D.    Pennsylvania Whistle Blower Law (Count 5)**

Stitt alleges that he was harassed, defamed, suspended, and constructively discharged by the Borough as a result of making good faith reports to the employer and appropriate authorities of instances of wrongdoing by Borough employees and officials. ECF No. 4, ¶ 115. He states the termination of his employment violated the Pennsylvania Whistleblower Law, 43 P.S. § 1423(a).

> **(a) Persons not to be discharged.**--No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

43 Pa. Stat. Ann. § 1423 (West). The Borough states that to assert a prima facie case of a Whistleblowing violation actual wrongdoing must be established and a causal connection between the report of the actual wrongdoing and Plaintiff's discharge. The elements required to establish a retaliatory termination in violation of the Whistleblower Law are: (1) wrongdoing; (2) a report of wrongdoing; (3) an adverse employment action; and (4) a causal connection between the report of wrongdoing and the adverse employment action. *See Johnston v. N. Braddock Borough*, No. CV 19-1548, 2020 WL 6730889, at *13 (W.D. Pa. Sept. 4, 2020), report and recommendation adopted as modified, No. 2:19 CV 1548, 2020 WL 5810008 (W.D. Pa. Sept. 30, 2020) (citing *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1200 (Pa. 2001). The Borough states that Plaintiff has not established a prima facie case. ECF No. 14, pp. 17-18.

Similar to the Court's discussion *supra* regarding Plaintiff's First Amendment claim, the Court finds there are issues of fact that must be considered by the fact-finder to properly determine whether there is a plausible claim under the Whistleblower elements. Here the Court has found plausible claims for wrongdoing, adverse employment action, and causal connection (the report of wrongdoing is not contested). Therefore, it cannot dismiss the Whistleblower claim as there are plausible claims to prove all the elements.

### E.     Breach of Contract (Count 6)

Stitt claims the Borough is responsible for his constructive discharge resulting in a breach of contract. The Court has discussed above the standard that must be proven for a case of constructive discharge (*see* Section III, B) and found that Stitt has asserted a plausible claim. Stitt has also asserted that the Borough knowingly permitted unprofessional behaviors by Mays and others that made Stitt's conditions of employment so intolerable that a reasonable person would resign under similar conditions. ECF No. 4, ¶ 101. The Borough also failed to rescind Mays' 41-day suspension of Stitt that led to his constructive discharge. ECF No. 4, ¶ 102. The Court acknowledges the Borough's argument that it wrote a disciplinary letter to Mays on January 4, 2024 (ECF No. 1-2). Nevertheless, given the totality of the facts, a plausible claim for constructive discharge exists.

To establish a prima facie case of breach of contract, a plaintiff must show "(1) a contract [existed] between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Given that there is a plausible claim for constructive discharge, the Court also finds that Stitt has sufficiently argued a plausible claim for a breach of contract.

### F.  Mays Qualified Immunity

A two-part analysis is used to resolve whether government officials are entitled to the protections of qualified immunity: The court must decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a federal constitutional or statutory right, and (2) if so, whether that right was "clearly established" at the time of the defendant's alleged misconduct. Qualified immunity applies unless the official's conduct violated such a right. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

As the Court found in its discussion, *supra*, it believes that Stitt has alleged plausible claims for violations of First, Fourth, and Fourteenth Amendment rights against Mays. Whether those rights were clearly established when Mays engaged in her alleged misconduct is a matter for the fact-finder. The Court finds that at this time Mays may not rely on the defense of qualified immunity.

## IV.  Conclusion

For the reasons stated above, Mays' Motion to Dismiss (ECF No. 26) will be GRANTED in part and DENIED in part; the Borough's Motion to Dismiss (ECF No. 13) will be GRANTED in part and DENIED in part; and Galli's Motion to Dismiss (ECF No. 24) will be GRANTED. The Court orders the following.

- The Motion to Dismiss the First Amendment Claim against Mays (Count 1) is DENIED.

- The Motion to Dismiss the Fourth and Fourteenth Amendment Claim against Mays and the Borough (Count 3) is DENIED as to the property interest in Stitt's Employment Contract.

- The Motion to Dismiss the Fourth and Fourteenth Amendment Claim against Mays and the Borough (Count 3) is GRANTED as to Stitt's reputational interest.

- The Motion to Dismiss the Conspiracy Claim as to all Defendants (Count 4) is GRANTED.

- The Motion to Dismiss the claim of Constructive Discharge against the Borough (Count 5) is DENIED.

- The Motion to Dismiss the claim of Breach of Contract against the Borough (Count 6) is DENIED.

This case shall proceed in litigation as to Counts 1, 2, 3 for property interest only, 5, and 6. The Clerk of Court is to terminate Defendant Galli from the case.

An appropriate Order will be entered.

Dated: September 29, 2025

_/s/ Stephanie L. Haines_
Stephanie L. Haines
United States District Court Judge